UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ROBERT HENRY JORDAN,

        Plaintiff,

    v.                              Case No. 19-C-649

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

---

## DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

---

      This is an action for judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Robert Henry Jordan's applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Plaintiff, who is currently serving a state prison sentence at Columbia Correctional Institution and representing himself, asserts that the Commissioner's decision should be reversed. For the following reasons, the decision of the Commissioner will be affirmed.

## BACKGROUND

      Plaintiff filed an application for supplemental security income in August 2012, and an application for disability insurance benefits in September 2012, alleging disability beginning on April 1, 2003. Plaintiff listed bipolar disorder, sleeping disorder, and hyperactive disorder as the conditions that limited his ability to work. R. 227. After his applications were denied initially and on reconsideration, Plaintiff requested a hearing before an administrative law judge (ALJ). On March 16, 2018, ALJ Jeffry Gauthier conducted a hearing where Plaintiff, who represented himself, and a vocational expert (VE) testified. R. 66–91.

At the start of the hearing, Plaintiff confirmed that the Agency had explained his right to representation but indicated he did not obtain representation. The ALJ noted that Plaintiff had nine months to obtain counsel and proceeded with the hearing. R. 69–70. At the time of the hearing, Plaintiff was thirty-five years old and incarcerated at the Racine Correctional Institution. R. 68, 73. He was convicted of sexual assault of a minor and sentenced to thirteen years of imprisonment. R. 74. Plaintiff worked as a custodian in the Institution and had previously cleaned the showers and restrooms. R. 76. He obtained his HSCD while incarcerated. R. 77. Plaintiff testified that the condition that is most disabling is his "hyperactive" disorder. He explained that he does things without thinking. He reported taking Clonodine for the condition and that the medication worked but made him drowsy. R. 80–81. Plaintiff stated that he goes to therapy every three weeks. R. 82. Each day Plaintiff works as a custodian, watches television, listens to music, and draws. R. 84.

In an eleven-page decision dated July 25, 2018, the ALJ determined Plaintiff was not disabled. R. 50–60. The ALJ's decision followed the five-step sequential evaluation process for determining disability prescribed by the Social Security Administration (SSA). At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since April 1, 2003, the alleged onset date. R. 52. At step two, the ALJ concluded Plaintiff has the following severe impairments: bipolar disorder and attention deficit hyperactive disorder. R. 53. At step three, the ALJ concluded Plaintiff did not have an impairment or combination of impairments that met or medically equaled the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Next the ALJ assessed Plaintiff's residual functional capacity (RFC) and found that Plaintiff can perform a full range of work at all exertional levels but with the following nonexertional limitations:

> The claimant can never work at unprotected heights nor around moving mechanical parts. He can never operate a motor vehicle in a place of work. With regard to understanding, remembering and carrying out instructions, the claimant can perform simple, routine, and repetitive tasks, but not at a production rate pace. With regard to the use of judgment in the workplace, the claimant can make simple work-related decisions. Additionally, the claimant can frequently interact with supervisors, and occasionally interact with coworkers and the public. The claimant can tolerate occasional changes in a routine work setting. Furthermore, in addition to normal breaks given, the claimant will be off task less than ten percent of the time in an eight-hour workday.

R. 55. At step four, the ALJ concluded that Plaintiff has no past relevant work but considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform, including laundry worker, assembly, and food preparation. R. 59. Accordingly, the ALJ found that Plaintiff has not been under a disability from April 1, 2003, through the date of the decision. *Id.* The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

## LEGAL STANDARD

The burden of proof in social security disability cases is on the claimant. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled."). While a limited burden of demonstrating that other jobs exist in significant numbers in the national economy that the claimant can perform shifts to the SSA at the fifth step in the sequential process, the overall burden remains with the claimant. 20 C.F.R. § 404.1512(f). This only makes sense, given the fact that the vast majority of people under retirement age are capable of performing the essential functions required for some subset of the myriad of jobs that exist in the national economy. It also makes sense because, for many physical and mental impairments, objective evidence cannot distinguish those that render a person incapable of full-time work from those that make such employment merely more difficult. Finally, placing the burden of proof on the claimant

3

Case 1:19-cv-00649-WCG   Filed 10/26/20   Page 3 of 14   Document 55

makes sense because many people may be inclined to seek the benefits that come with a finding of disability when better paying and somewhat attractive employment is not readily available.

The determination of whether a claimant has met this burden is entrusted to the Commissioner of the Social Security Administration. Judicial review of the decisions of the Commissioner, like judicial review of all administrative agencies is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). But the "substantial evidence" test is not intended to reverse the burden of proof. In other words, a finding that the claimant is not disabled can also follow from a lack of convincing evidence.

Nor does the test require that the Commissioner cite conclusive evidence excluding any possibility that the claimant is unable to work. Such evidence, in the vast majority of cases that go to hearing, is seldom if ever available. Instead, the substantial evidence test is intended to ensure that the Commissioner's decision has a reasonable evidentiary basis. *Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) ("The substantial-evidence standard, however, asks whether the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record)").

The Supreme Court recently reaffirmed that "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in

4

other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229). It means—and means only—"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

The ALJ must provide a "logical bridge" between the evidence and his conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). But it is not the job of a reviewing court to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

As an initial matter, the court will address the medical records and exhibits Plaintiff attached to his brief and submitted to the court after filing his brief. A court may "at any time

order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405.

> Evidence is "new" if it was "not in existence to the claimant at the time of the administrative proceeding." New evidence is "material" if there is a "reasonable probability" that the ALJ would have reached a different conclusion had the evidence been considered. Thus, new evidence is material only if it is relevant to the claimant's condition "during the relevant time period encompassed by the disability application under review."

*Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) (citations omitted).

Many of the records Plaintiff requests that the court consider were generated before his alleged onset date or post-date the ALJ's decision and are therefore not material to the ALJ's decision. *See Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008) ("None of the new evidence proffered by Mr. Getch speaks to his condition at the relevant time period; it pertains only to his allegedly worsening condition in 2004 and 2005—well after the ALJ rendered his decision. If Mr. Getch has developed additional impairments, or his impairments have worsened, since his first application for benefits, he may submit a new application." (citation omitted)). Plaintiff also submitted records pertaining to the relevant time period as well as his own handwritten commentary. Plaintiff has not explained why these records were not part of the administrative record or submitted earlier. In any event, the information regarding Plaintiff's treatment for anxiety, depression, and difficulty concentrating was included in the administrative record and would not likely change the ALJ's decision. In short, the court will not consider the new evidence submitted by Plaintiff and will not order that it be reviewed by the Commissioner of Social Security. The court will now address Plaintiff's challenges to the ALJ's decision.

Plaintiff raises numerous challenges to the ALJ's decision. Although pro se filings are held to a less exacting standard than those prepared by counsel, the filing must contain a cogent

6

argument with reasons supporting it as well as citations to authority and relevant parts of the record. *See Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001); *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). The court has undertaken a review of the record and concludes that the ALJ did not err.

Plaintiff argues that the ALJ failed to consider his mental impairments when assessing the severity of his impairments at step two of the sequential evaluation process. He asserts that the ALJ failed to find that his depression was a severe impairment. Notwithstanding the fact that Plaintiff does not cite any evidence in the record to support a depression diagnosis, the determination of whether an alleged impairment is severe at step two is essentially a "de minimis" screening device that allows the SSA to increase "the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); *see also Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999) (noting that the step two determination of severity is "merely a threshold requirement"). If no severe impairments are found, the case ends with a denial of the application. But if the ALJ determines that the claimant has at least one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process. 20 C.F.R. § 404.1523. In this case, the ALJ found that Plaintiff had severe impairments including bipolar disorder and attention deficit hyperactivity disorder and continued on with the sequential evaluation to address and evaluate all of Plaintiff's impairments. Therefore, the ALJ's step two finding was not insufficient so as to require reversal.

Plaintiff argues that the ALJ's listing discussion at step three is inadequate. At step three, the ALJ must determine whether the plaintiff's impairments or combination of impairments meet

7

or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). "In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than perfunctory analysis of the listing." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015) (quoting *Burnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). Plaintiff contends that the ALJ should have found that he met the "A" criteria for depression but he neither identifies which listing he believes the ALJ ought to have addressed nor explains how the evidence supports the criteria of any listing. The ALJ evaluated Plaintiff's mental impairments with respect to Listings 12.02 (neurocognitive disorders) and 12.08 (personality and impulse-control disorders). The ALJ's decision was more than perfunctory. The ALJ identified the potentially applicable listings; explained that the evidence did not meet the listed criteria; and analyzed Plaintiff's severe and nonsevere impairments, the objective medical evidence, the medical opinions, and Plaintiff's subjective symptoms. When considered in combination with the ALJ's analysis of Plaintiff's RFC, the ALJ met his "duty to articulate." *See Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) ("The ALJ provided the discussion of Curvin's severe and non-severe impairments, the objective medical evidence and her credibility directly after step 3 when he determined her RFC. This discussion provides the necessary detail to review the ALJ's step 3 determination in a meaningful way."). Accordingly, the ALJ's step three determination was not improper.

Next, Plaintiff challenges the ALJ's RFC assessment. A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). It "is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. Plaintiff asserts that the ALJ failed to conduct a function-by-function analysis in assessing his RFC. Although a "function-by-function assessment of an individual's

limitations ensures that the ALJ does not overlook an important restriction and thereby incorrectly classify the individual's capacity for work," SSR 96-8p does not require that an ALJ assess every single work-related function. SSR 96-8p. Instead, the ALJ must provide a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence." *Ronning v. Colvin*, No. 13 CV 8194, 2015 WL 1912157, at *6 (N.D. Ill. Apr. 27, 2015); *Knox v. Astrue*, F. App'x 652, 657 (7th Cir. 2009) ("Although the RFC assessment is a function-by-function assessment, SSR 96-8p, the expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient." (internal quotation marks omitted)).

The ALJ concluded Plaintiff had the RFC to perform a full range of work at all exertional levels with very specific limitations, such as Plaintiff can never work at unprotected heights nor around moving mechanical parts; he can never operate a motor vehicle in a place of work; with regard to understanding, remembering, and carrying out instructions, he can perform simple, routine, and repetitive tasks, but not at a production rate pace; with regard to the use of judgment in the workplace, he can make simple work-related decisions; he can frequently interact with supervisors and occasionally interact with coworkers and the public; he can tolerate occasional changes in a routine work setting; and in addition to normal breaks given, he will be off task less than ten percent of time in an eight-hour workday. R. 55. In creating this detailed RFC, the ALJ provided a narrative discussion of Plaintiff's symptoms, his ability to perform activities of daily living, the medical evidence in the record, and the medical source opinions.

The ALJ noted that, although Plaintiff alleged disability beginning in April 2003, the record is devoid of any medical evidence until 2010, when his bipolar disorder was noted to be in

9

remission. In 2012, Darrel Hischke, Ph.D., conducted a psychiatric evaluation and observed that, while Plaintiff was hyperactive and appeared to have some difficulty with impulse control, he otherwise presented with no abnormalities. The ALJ observed that, consistently throughout examinations, Plaintiff presented with signs of an erratic mood and increased energy but did not present with anxiety, panic attacks, sleep impairment, decreased concentration, memory impairment, hallucinations, irritability or anger, paranoia, or disorganized thoughts. Although Plaintiff had some past auditory hallucinations, Plaintiff's treating provider indicated Plaintiff did not appear to be responding to internal stimuli. The ALJ noted that, in March 2014, psychological services reported Plaintiff's condition was stable, and while Plaintiff reported some side effects to medication, he reportedly responded very well to clonidine. As for other treatment, the ALJ noted that Plaintiff engages in one-on-one counseling in prison. R. 56. The ALJ observed that Plaintiff initially reported that he spends time with others and does not have issues getting along with others, but he later reported that he does not like people getting close to him because he feels like he has to fight. R. 53. Outside of segregation, the ALJ noted that Plaintiff is in a double cell and gets along with all of his roommates while joking together and avoiding drama. *Id.* The ALJ concluded that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms are inconsistent with objective signs because his conditions are adequately controlled on medications and are inconsistent with his activities reported throughout the record, including trying to get a prison job, working buffing floors, working as a night custodian, and engaging in educational classes. R. 56.

Plaintiff asserts that his pain limits his ability to stand and engage in activities and that he can only sit for 20 to 30 minutes at a time before he has to change position. To the extent Plaintiff believes these limitations should have been included in the RFC, Plaintiff did not allege that he

10

had any physical impairments in his disability claims, the state reviewing physicians concluded that there was no evidence of medically determinable physical impairments, and Plaintiff does not point to any record evidence that any physical impairments result in limitations beyond what the ALJ articulated in the RFC. R. 104, 118–19. In short, the ALJ did not err in declining to create his own limitations related to any physical impairments.

The ALJ also considered the opinion evidence from Dr. Hischke, the state agency, and Plaintiff's sister, Quanisa Turner, in creating the RFC. As to Dr. Hischke's opinions, the ALJ noted that, in connection with his November 2012 psychiatric evaluation, Dr. Hischke opined that Plaintiff had only mild limitations in mental functioning with the exception of marked limitations in his ability to maintain a pace in a work setting. Though the ALJ found that Dr. Hischke's mild findings are more consistent with the evidence, he explained that the abnormalities reported as no more than mild difficulties following the conversation and recalling two out of three items with interference tasks, do not support a finding of a marked limitation. The ALJ therefore assigned only some weight to this opinion. R. 56.

The ALJ considered the opinion of the state agency through its medical consultants Kyla King, Psy.D., and Roger Rattan, Ph.D. R. 56. At the initial level in January 2013, the ALJ noted that Dr. King opined that Plaintiff may have limits with his ability to understand and remember detailed instructions and has moderate limitations with his ability to concentrate. R. 56–57. Upon reconsideration in July 2013, the ALJ observed that Dr. Rattan opined that Plaintiff is capable of basic mental demands of unskilled work. The ALJ assigned great weight to their opinions, reasoning that the state agency consultants reviewed the record, which remained reflective of Plaintiff's condition even subsequent to their review, they understand the disability program, and

11

their opinions are consistent with the evidence showing that the claimant's medication adequately controls his symptoms. R. 57.

The ALJ noted that Plaintiff's sister provided a disability report and other reports, alleging that Plaintiff zones out, has unknowing outbursts, cannot focus on one task, has terrible listening skills, and is easily distracted. *Id.* The ALJ gave some weight to her statements, due to their consistency with the objective medical evidence and medical opinions of record. He explained that Turner does not have the medical training necessary to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms and that, based on her relationship with Plaintiff, he cannot consider her to be a disinterested third party witness whose statements would not tend to have a natural tendency to agree with the symptoms and limitations Plaintiff alleges. *Id.* The ALJ also noted the assessed Global Assessment of Functioning (GAF) scores of 51 through 70 in the record. The ALJ gave the GAF scores some weight because they are generally consistent with the objective evidence throughout the record. *Id.*

Plaintiff asserts that the ALJ minimized the extent of the limitations from his impairments. To the extent Plaintiff argues that the ALJ did not sufficiently discuss all of the evidence related to each of his impairments, an ALJ is not required to discuss every piece of evidence in the record. *See Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009). In this case, the ALJ conducted an extensive review of the record and limited Plaintiff as set forth in the RFC to account for limitations found in the medical evidence and other evidence. He explained that, although Plaintiff's alleged limitations are not fully persuasive, given the evidence in the record, he found that Plaintiff retains the ability, despite his impairments, to perform a full range of work with the limitations noted in the RFC. He determined the off-task limitation is appropriate given Plaintiff's severe impairments, which include attention deficit hyperactive disorder. R. 58. The ALJ's decision satisfies the

12

requirements of SSR 96-8p.  The ALJ properly evaluated the record in creating the RFC and provided a logical bridge between his findings and the record in making his determination.  In short, the ALJ provided a sufficient RFC analysis supported by substantial evidence in the record.

Plaintiff further asserts that the ALJ erred in not assigning controlling weight to his treating psychiatrist's opinion.  He does not identify the mental health provider or the opinion at issue, however, and does not cite supporting authority.  Because Plaintiff did not develop this argument, it will not be considered.  *See Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018) ("perfunctory and underdeveloped arguments are deemed waived" (citation omitted)).

Plaintiff contends that the ALJ should have obtained a consultative psychological examination but does not explain why an additional examination was necessary.  An ALJ is not required to order consultative examinations, "but may do so if an applicant's medical evidence about a claimed impairment is insufficient."  *Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007); *see also* 20 C.F.R. §§ 404.1519; 416.917.  The record in this case contained numerous mental health treatment notes, a consultative examination performed by Dr. Hischke, and two opinions from state agency physicians, as well as other evidence.  The ALJ fully developed the record and therefore a further psychiatric evaluation was unnecessary.

One final matter warrants comment.  Plaintiff appeared pro se at the administrative hearing, despite having the right to counsel pursuant to 42 U.S.C. § 406(a)(1) and 20 C.F.R. § 404.1700.  In the Seventh Circuit, a pro se claimant may waive the right to representation, provided the ALJ explains to the claimant: "(1) the manner in which an attorney can aid in the proceedings; (2) the possibility of free counsel or a contingency arrangement; and (3) the time limitation on attorney's fees to twenty-five percent of past due benefits and required court approval of the fees."  *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) (citing *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th

Cir. 1991)).  In this case, the Agency explained to Plaintiff the right to representation and allowed Plaintiff nine months to obtain counsel.  R. 69–70.  The court finds that the ALJ did not err in proceeding with the hearing.

Though Plaintiff disagrees with the ALJ's finding that he is not disabled, his disagreement does not invalidate the ALJ's decision.  *See Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993).  After a review of the record, I conclude that the ALJ did not commit any legal errors and that substantial evidence supports his decision.  I therefore affirm the Commissioner's decision.

## CONCLUSION

For the reasons above, the Commissioner's decision is **AFFIRMED**.  The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** at Green Bay, Wisconsin this 26th day of October, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
